SOUTH MEMPHIS LAND COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44500.   Promulgated March 7, 1933.

*F. E. Hagler, Esq.,* and *E. C. Reynolds, Esq.,* for the petitioner.
*R. W. Wilson, Esq.,* for the respondent.

OPINION.

LANSDON: The respondent has determined deficiencies in income taxes for the years 1925 and 1926 in the respective amounts of $12,347.74 and $782.65. The petitioner contends (1) that it sustained a net loss in 1924 in the amount of $7,409.99, resulting from the compromise of certain litigation which the respondent has refused to carry forward to reduce its tax liability for 1925; (2) that it sustained a net loss in 1925 resulting from the sale of a certain light and power franchise which it acquired before March 1, 1913; and (3) that the respondent erroneously computed the profits resulting from the sale in 1926 of shares of stock which it acquired before March 1, 1913. The determination of these several contentions requires the Board to find the fair market value at March 1, 1913, of the contract, franchise and stock owned by the petitioner on that date. The parties have filed a stipulation of facts, which is incorporated herein by reference, and the petitioner has adduced certain oral and documentary evidence intended to establish the values in controversy.

Petitioner is a Tennessee corporation, with its principal office at Memphis. In or about 1905, it acquired about 4,000 acres of land approximately one mile south of the corporate limits of Memphis. Something like 200 acres of such land were suitable for industrial sites and the remainder was well adapted to residential purposes. Since the date of its incorporation it has been engaged in subdividing and selling such land.

When acquired this land above described was served by only one railway, the Illinois Central, and switching charges for handling cars over that road were about $2 per car higher than for locations within the city of Memphis. In order to attract industries, it was necessary to have better railway facilities and lower switching rates. Accordingly, the petitioner, on September 14, 1905, entered into a contract with the Union Railway Company, a subsidiary of the Missouri Pacific Railway, which provided for the construction of the tracks and switches necessary to the development of its acreage suitable for industrial sites. Under the terms of such contract the peti-

tioner paid the Union Railway Company $12,500, which was to be used before January 1, 1907, for the construction of a levee to protect the proposed track extensions, and the railway agreed to construct the specified trackage on or before January 1, 1907, and, after completion, to establish switching charges not in excess of rates prevailing in Memphis.

When the Union Railway Company undertook the construction of the tracks provided for in the contract it was enjoined from crossing the tracks of the Illinois Central at grade. Long continued litigation followed, during which it was impossible to build the trackage provided for in the contract. In 1924 such litigation was terminated by a compromise settlement in which the petitioner surrendered its contract and received $50,500.

Relying on its contract with the Union Railway Company, the petitioner, prior to January 1, 1907, sold to the McLean Hardwood Company a 10-acre tract for a sawmill site and in the conveyance guaranteed that the proposed trackage would be constructed. Upon the default of the Union Railway Company as to the proposed construction the lumber company sued the petitioner for damages and in the first trial was awarded a favorable decision, which was reversed by a higher court, but subsequent litigation resulted in judgment against the petitioner for $17,500, which was affirmed by the Circuit Court of Appeals and accepted by the parties as final. On July 2, 1914, in full settlement thereof, the petitioner paid the lumber company $25,978.69, which included all the costs and expenses incurred by the plaintiff in the prosecution of the suit.

In its income tax return for 1924, the petitioner reported no profit from the receipt of the $50,500 by it in the compromise in which it surrendered its contract as set out above. Upon audit of such return the respondent determined taxable income therefrom in the amount of $13,456.69, which he computed by deducting from the said $50,500 the amounts of $25,978.69 and $11,064.62, representing the judgment and legal expenses paid by the petitioner as the result of the damage suit of the McLean Hardwood Company. The petitioner contends that the respondent erroneously disallowed any value of the contract in question as of March 1, 1913, and at the hearing undertook to prove a substantial value thereof at that date.

Section 204 (b) of the Revenue Act of 1924 provides that:

The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be "(A) the cost of such property * * * , or (B) the fair market value of such property as of March 1, 1913, whichever is greater. * * *

The evidence indicates that the contract, if accomplished, would have added greatly to the value of the land owned by the petitioner

at March 1, 1913. It is clear, however, that at such date the Union Railway Company was in default of its obligations, the ultimate performance of which was dependent upon the favorable outcome of litigation. There is no testimony that the contract had any market value at any time or that it was possible to sell it as a separate item of property, or as to the amount that could have been realized from such a sale. On this issue the determination of the respondent is affirmed.

During the period from 1905 to 1925 the petitioner owned electric light and power facilities which it operated under the trade name of South Memphis Light and Traction Company. In the year 1925 it sold such facilities and business to the Memphis Power and Light Company for $145,000. The parties have stipulated that in connection with its operations the petitioner owned and operated the necessary light plant and also had perpetual and exclusive right of way or franchise over the streets, alleys and public places on and across about 4,000 acres of land in and around New South Memphis, which was at that time a rapidly growing industrial and residential section situated immediately south of the city limits of Memphis, Tennessee; that the petitioner also had other valuable and exclusive franchise rights granted by the court of Shelby County, Tennessee, all of which franchise rights were included in the sale to the Memphis Light and Power Company; that during the period 1913 to 1925 the patronage of the South Memphis Light and Traction Company was substantially increased, both in number of customers and in amount of current used.

In its income tax return for 1925 the petitioner claimed a net loss in the amount of $87,009.65 resulting largely from the sale of its light and power business as above set forth and a net loss of $71,184.78 which it computed upon the basis of an alleged value of franchise at March 1, 1913, of $150,000.

Upon audit of such return the respondent held that the franchise was without value at March 1, 1913, disallowed a net loss in the amount of $9,943.54 which petitioner sought to carry forward from 1924, held that the sale of the light and traction property resulted in a profit of $100,864.05, based on the depreciated cost of the tangible assets of $39,635.95, March 1, 1913, value of land of $1,500, and sales commissions of $3,000.

The deed transferring title to the petitioner's light and traction property recites that it conveys (1) the entire physical plant, (2) and an easement in land on which poles stand, including those in public streets, on alleys, and all other property, except cash and notes and accounts of the South Memphis Light and Traction Company, forming a part of and appertaining to or used or occupied or em-

ployed in connection with said distributing system and stations used for purposes of receiving and distributing electrical energy; together with all rights of ways, easements, permits, licenses, immunities, privileges, franchises and rights for or related to the construction, maintenance or operation of such system, through, over, under or upon any public streets, or highways, of the public or other lands, and all materials and other supplies which are now held by the said South Memphis Light and Traction Company or South Memphis Land Company for use in connection with such distribution, all of the foregoing being located in or adjacent to what is now known as New South Memphis. Certain real estate about which there is no controversy as to value at March 1, 1913, was also included in the sale.

It is stipulated that the franchise and other rights and property which the petitioner owned and used in its light business at March 1, 1913, were all included in this sale to the Memphis Power and Light Company in 1925. The only controversy here is as to the value of such property at the basic date, which the petitioner contends was in excess of $150,000. The respondent has held, and, in the brief, argues that at such date the property had no market value. In support of its contention of value the petitioner adduced the oral evidence of its president, former general counsel, and several men not in any way connected with it.

Thomas H. Allen, a consulting engineer of more than twenty years experience, familiar with the light and power business, and with the petitioner's property and prospects, placed the value of the franchise in question at $100,000 at March 1, 1913. J. T. Ramier, a public utility engineer from 1908 to 1921, was well acquainted with the property and was at one time connected with the purchaser. He testified to $100,000 as a very reasonable figure to cover the franchise value in controversy. By agreement of counsel, the affidavits of General S. T. Carnes and L. G. Van Ness, both now deceased, were admitted in evidence. General Carnes in his lifetime promoted and built the Memphis Telephone Company and the Memphis Power and Light Company. In his opinion the franchise sold by petitioner in 1925 was worth $150,000 in cash or more at March 1, 1913. Van Ness was vice president and general manager of the Merchants' Power Company, which acquired a franchise from the City of Memphis about 1906, and under his direction constructed a lighting system for the city. He was engaged in the electric light and power business until 1927. In his opinion the value of the franchise in question at March 1, 1913, was not less than $75,000. The president of the petitioner testified to value of $200,000 to $250,000 as of the basic date. A former general counsel of the petitioner testified to considerable experience in the light and power

business in connection with petitioner, the Merchants' Power Company and other similar concerns. In his opinion the franchise in question was worth at least $100,000 at the date material here. The respondent introduced no evidence in rebuttal and in cross examination did not weaken or discredit that adduced by the petitioner. After careful consideration of all the testimony we are of the opinion that the franchise in question had a value of $100,000 at March 1, 1913. Such value should be used as the basis for computing the gain resulting from the sale thereof in 1925.

In the year 1912 the petitioner acquired 300 shares of the common stock of the Memphis Terminal Corporation of the par value of $100 per share. In the year 1924 it exchanged such shares for an equal number of $100 shares of the preferred stock of the same corporation. In 1926 it sold such preferred shares for $31,500 and in its income tax return for that year reported a profit from such sale in the amount of $16,500, based on alleged market value at March 1, 1913, of $50 per share. Upon audit the respondent increased such profit to $24,000, computed on a basis of $25 per share at March 1, 1913.

Petitioner acquired the 300 shares of the common stock of the Memphis Terminal Corporation in connection with the reorganization of the said corporation, at which time bonds were issued and with the sale of each $1,000 bond one share of common stock was given to the purchaser. The books of the corporation show a surplus at August 31, 1911, in the amount of $145,045.60 and that it earned net profits in the year 1912 and the six months ended at March 1, 1913, in the respective amounts of $132,595.26 and $45,620.19 and that the book value of its stock at the later date was $26.13 per share. The stock in question was never listed and no sales on or about the basic date were proved. No evidence was introduced to show the nature or value of the preferences in the preferred stock for which the common stock was exchanged in 1924. The books indicate earnings for the year and one-half prior to March 1, 1913, equal to about 8 per cent of the par value of the common stock after provision for bond interest. The common stock was quoted in Memphis newspapers on August 9 and August 18, 1914, at $20 bid—$25 asked. In April, 1912, the bonds of the corporation sold at approximately 90 per cent of par value. In the light of these facts we are of the opinion that the petitioner has failed to overcome the presumption of correctness attaching to the respondent's determination that the market value of the stock of the corporation was $25 per share at March 1, 1913.

Reviewed by the Board.

*Decision will be entered under Rule 50.*